UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**
MAY 2 7 2011
CLERK

| | |
|---|---|
| Marco, Inc., a Minnesota corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Advanced Systems, Inc., an Iowa<br>corporation, Christine M. Bergeson, Wayne<br>C. Ewing, Jim E. Liebsch,<br>Michael R. Linton, Lorin Pitts,<br>Paul W. Robson, Jr., and Kent Reilly,<br><br>    Defendants. | Civil No. *11-4072*<br><br><br>**VERIFIED COMPLAINT**<br>[Jury Trial Requested] |

Plaintiff Marco, Inc. ("Marco") for its Complaint against Advanced Systems, Inc.

("Advanced Systems"), Christine M. Bergeson ("Bergeson"), Wayne C. Ewing ("Ewing"),

Jim E. Liebsch ("Liebsch"), Michael R. Linton ("Linton"), Lorin Pitts ("Pitts"), Paul W.

Robson, Jr. ("Robson"), and Kent Reilly ("Reilly") (collectively, "Defendants"), states and

alleges as follows:

## INTRODUCTION

This action arises out of Defendant Advanced System's unfair competition, its tortious

interference with Marco's customer and employment contracts, its misappropriation of trade

secrets, its willful disregard of ongoing contractual obligations under a non-disclosure and

non-use agreement, its solicitation of employees with known non-compete agreements, and

its violation of the Deceptive Trade Practices Act.

Marco and Advanced Systems are direct competitors in the office equipment industry.

In late 2010 and early 2011, Marco and Advanced Systems both submitted bids to purchase

Best Business Products, Inc. ("Best"), a Sioux Falls-based company that has been selling

copiers, printers, fax machines and scanners in South Dakota for over 60 years. Best was, and is, the only authorized Canon copier dealer in South Dakota. During the bidding process, Advanced Systems entered into a confidentiality and non-use agreement with Best, which agreement precludes Advanced Systems from using any confidential information it obtained from Best during the due diligence process and prohibits Advanced Systems from soliciting Best employees and customers. Marco submitted the winning bid and ultimately purchased Best's assets, including, among others, all of Best's contractual rights, claims, goodwill and the name "Best Business Products."

The day before Marco closed on its acquisition of Best, Defendants Bergeson, Ewing, Liebsch, Pitts, and Robson simultaneously resigned from their employment with Best and started Advanced System's new "Sioux Falls' branch office." These individuals, along with Linton and their Advanced Systems' managers, began immediately targeting Best customer accounts, the same accounts that Marco lawfully purchased from Best. Marco has now learned that: (1) during the due-diligence process, Advanced Systems acquired a full (un-redacted) copy of Best's entire customer database, which proprietary information was only returned to Marco a few weeks ago (and almost three months after Advanced Systems learned that it was not the winning bidder); (2) Advanced Systems solicited a large number of Best employees in the weeks leading up to Marco's closing of the Best asset purchase; and (3) Defendant Ewing, a former Best executive, unlawfully copied and misappropriated a large volume of company proprietary data a few days prior to his resignation and stole, among other items, a detailed list of all equipment under contract for *all* Best customers (a 2,198 page document) and a report containing "Contract Profitability" information for *all* *customer* contracts of Best (a 1,931 page document).

Advanced Systems knew, or had reason to know, that the individual Defendant-

employees had non-compete agreements with Best, which agreements transferred to Marco as part of the asset sale. Yet not only did Advanced Systems solicit and hire these employees in direct violation of its agreement with Best, but Advanced Systems further directed these same employees to solicit Best's customers on Advanced Systems behalf. Advanced Systems also inappropriately used, and continues to use, the information that Defendant Ewing stole from Best for its own benefit. The intended result was to obtain for free what Marco had lawfully purchased: the customer relationships and goodwill developed over 60 years by Best. Advanced Systems' business tactics are unlawful and must be stopped.

Marco brings this action to enforce its rights, to enjoin Advanced Systems' unfair competition, to protect the investment that it made in South Dakota and protect the livelihood of the 60+ employees that it is employing in the state.

## PARTIES, JURISDICTION AND VENUE

1.      Marco is a corporation organized under the laws of Minnesota with its principal place of business at 3000 Division Street, St. Cloud, Minnesota 56301. Marco is a 100% employee-owned company in the office equipment industry and has a number of branch offices throughout the Upper Midwest, including an office in Sioux Falls, South Dakota, which opened in 2009, two years prior to its acquisition of Best.

2.      Advanced Systems is a corporation organized under the laws of Iowa, with its principal place of business located at 2945 Airport Boulevard, Waterloo, Iowa 50703. All of Advanced Systems' branch offices are located in Iowa, with the exception of the recently formed Sioux Falls office.

3.      Christine M. Bergeson is an individual who resides at 104 S. Kelley Avenue, Hartford, South Dakota 57033. Bergeson worked as a Copier Service Technician for Best at its Sioux Falls location since October 6, 1997. Upon information and belief, Bergeson signed a

3

non-compete agreement with Best. On April 28, 2011, the day before Marco closed on the Best acquisition (the "Closing"), Bergeson resigned from her employment and went to work for Advanced Systems.

4.      Wayne C. Ewing (a/k/a Craig Ewing) is an individual who resides at 5400 Chelsea Drive, Sioux Falls, South Dakota 57104. Ewing worked as a Field Service Manager for Best at its Sioux Falls location since August 4, 1997. Upon information and belief, Ewing signed a non-compete agreement with Best. Ewing was a "key" employee of Best and was part of the executive team. On April 28, 2011, the day before Closing, he resigned from his employment and went to work for Advanced Systems. As a member of Best's executive team, Ewing was not only aware that Best was looking for potential buyers in late 2010, but he was involved in gathering information to provide to potential buyers, including Advanced Systems. Upon information and belief, Advanced Systems is currently operating out of Ewing's home.

5.      Jim E. Liebsch is an individual who resides at 301 Valley Drive, Yankton, South Dakota 57078. Liebsch worked as a Copier Sales Representative for Best at its Yankton location since January 1, 2002. Upon information and belief, Liebsch signed a non-compete agreement with Best. On April 28, 2011, the day before Closing, he resigned from his employment with Marco and went to work for Advanced Systems.

6.      Michael R. Linton is an individual who resides at 2810 East 20th Street, Sioux Falls, South Dakota 57103. Linton worked as a Copier Sales Representative for Best at its Sioux Falls location since March 13, 2006. Upon information and belief, Linton signed a non-compete agreement with Best. Linton was terminated from Marco on April 29, 2011.

7.      Lorin Pitts is an individual who resides at 46782 220th Street, Brookings, South Dakota 57006. Pitts worked as a Copier Service Technician for Best at its Brookings location

since April 1, 1974. Upon information and belief, Pitts signed a non-compete agreement with Best. On April 28, 2011, the day before Closing, he resigned from his employment and went to work for Advanced Systems.

8. Paul W. Robson, Jr., is an individual who resides at 501 1st Street Southwest, Watertown, South Dakota 57201. Robson worked as a Copier Sales Representative for Best at its Watertown location since November 7, 2006. Upon information and belief, Robson signed a non-compete agreement with Best. Robson signed a new non-compete agreement with Marco on April 25, 2011. Although Robson is not identified in Advanced Systems' recent announcements as an employee, his personal attorney contacted Marco on May 2, 2011 and indicated that Robson was "rescinding" the non-compete agreement that he signed with Marco. Mr. Robson's attorney subsequently indicated that Robson was offered a position with Advanced Systems. Upon information and belief, Robson accepted such position with Advanced Systems.

9. Kent Reilly is an individual residing at 1517 South Sunny View Drive, Sioux Falls, South Dakota 57110. Until his resignation on May 9, 2011, Reilly worked as General Manager/Sales Manager for Best and was the highest-ranking employee on site at Best. Reilly was a "key" employee with Best and was part of the executive team. Reilly signed a non-compete agreement with Best.

10. The citizenship of Plaintiff is entirely diverse from the citizenship of Defendants, and the matter in controversy exceeds $75,000, exclusive of interests and costs. Therefore, the jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1332.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2) because at least one Defendant resides in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

**A.    Marco, Its Business, and Its Competitor, Advanced Systems.**

12.    Marco is in the office equipment, document management, and data networking and security business.  It has branch locations throughout Minnesota, North Dakota, South Dakota, Wisconsin and Iowa.  Marco is an authorized dealer of Canon and Konica products in South Dakota.

13.    Advanced Systems is also in the office equipment and document management business and is a direct competitor of Marco.  Advanced Systems operates offices in Waterloo, Cedar Rapids, Fort Dodge, Dubuque, Mason City, Davenport and Spencer, Iowa.  Most recently, Advance Systems opened an office in Sioux Falls.  Prior to April 29, 2011, Advanced Systems did *not* operate in South Dakota.  Advanced Systems is also an authorized dealer of Canon products, but it is *not* authorized in South Dakota.  In fact, Marco is the only Canon authorized dealer authorized out of South Dakota.

14.    Dealers of Canon products are authorized by Cannon for designated territories only.  Specifically, a dealer is authorized out of a specific city (or cities), including a 4-hour driving radius of that city.  Best was the only authorized Canon dealer in South Dakota.  With Marco's acquisition of Best (see details in Sections E-F below), Marco is now the only authorized dealer of Canon products out of South Dakota.  Besides Sioux Falls, Marco took over five (5) additional service areas in South Dakota, including Rapid City, Aberdeen, Watertown, Pierre, Yankton, and two in Minnesota, Marshall and Fairmont.  Upon information and belief, Advanced System is only authorized by Canon out of its Waterloo, Iowa location.  Sioux Falls, Rapid City, Aberdeen, Watertown, Pierre and Yankton, as well as Marshall, Minnesota and Farmington, Minnesota, are all outside the 4-hour drive radius of Waterloo, Iowa.  Advanced

Systems is, therefore, not an authorized Canon dealer out of those areas, and specifically is not authorized out of South Dakota.

**B.      Best Business Products: Background of Company.**

16.      Best is a corporation organized under the laws of South Dakota, that was engaged in the business of selling and servicing copiers, printers, scanners and other related equipment and services.   When Betty Best, the owner of Best passed away, ownership of the company passed to her estate.  Wells Fargo was appointed personal representative for the Estate of Betty Best and Wells Fargo Trustee, Jim Schoettler, (the "Trustee") stepped in and formally assumed the role of President of the company.  Because the Trustee was located in Minneapolis, he turned over the day-to-day management of Best to the Executive team, which included Defendant Reilly, the General Manager/Sales Manager of Best, and Defendant Ewing, Field Service Manager, both of whom resided and worked in Sioux Falls.  The Trustee also hired accountant Vince Smith ("Smith") to provide accounting/CFO support for the company.

**C.      General Manager - Defendant Kent Reilly.**

16.      As General Manager/Sales Manager, Reilly was the highest-ranking employee at Best.  He reported directly to the Trustee.  Reilly's duties included carrying out Best's strategic plans and policies, advising the board of directors, and implementing the budget established by the board of directors.   Reilly also oversaw the design, marketing, promotion, delivery, and quality of Best's programs, products, and services.  Reilly was responsible for directing Best employees and assuring that Best and its products were consistently presented in a strong, positive image to the local community and the general public.  As General Manager/Sales Manager, Reilly performed all the duties and responsibilities of a CEO and COO.  In his role as General Manager/Sales Manager, he also had access to and intimate knowledge of Best's

confidential and proprietary information.  Reilly also oversaw and helped execute the bidding process and sale of Best (as further described below).  In this executive and management role, Reilly earned a base salary of $180,000 per year, plus sales and bonus commissions, and benefits.

17.      Because Reilly was critical to Best's success, and because in his role as General Manager/Sales Manager he had access to Best's business and proprietary information, Best and Reilly executed an Employment Agreement on September 18, 2009 in order to safeguard the company's information.  (A true and correct copy of the Employment Agreement between Best and Reilly (the "Reilly Agreement")) is attached hereto as Exhibit A.  In the Reilly Agreement, Reilly agreed, among other things, that he would not, during his employment or anytime thereafter, disclose, reveal, publish or transfer any of Best's "Proprietary Information" to any person or entity for any reason or purpose whatsoever and that he would not make use of any Proprietary Information for his own purposes or for the benefit of any person or entity, except Best under any circumstances.

18.      The Reilly Agreement defines Proprietary Information as:

*The trade secrets and other information of [Best] concerning services and products; acquisition candidates and plans and techniques for acquisitions generally; plans and ideas for expansion and for new services and products; technical needs, tests, reports, inspections, and formulas concerning customers of [Best]; materials, costs, specifications, processes, and methods of providing services and producing products; procurement and sales activities and procedures; promotion, bidding, and pricing techniques; credit and financial data concerning customers and suppliers; data, records, and computer programs; know-how, technical information, methods of operation; plans, projections, marketing information, designs, and treatments; as well as information relating generally to the management, operation, or planning of [Best] . . . .*

*See* Reilly Agreement, ¶5.

19.    Additionally, in order to further protect the confidentiality of the Proprietary

Information, and in recognition of the highly competitive nature of the industry, Reilly agreed

not to compete with Best for two years following the termination of his employment:

> *[Reilly] will not, during and for the period commencing with the date hereof and ending on the date that is two years after termination or expiration of [Reilly's] employment with [Best] (hereinafter referred to as the "Restricted Period"), directly or indirectly engage in any Restricted Activities (as hereinafter defined), other than on behalf of [Best], whether such engagement is as an officer, director, proprietor, employee, partner, investor (other than as a holder of less than 1 % [sic] of the outstanding capital stock of a publicly traded corporation), consultant, advisor, agent or otherwise, alone or jointly with others, anywhere within [sic] 150 mile radius of the locations of [Best] set forth on Schedule A hereto (hereafter the "Territory").   "Restricted Activities" shall mean the marketing, sale, installation and servicing of copier equipment, products and services and any other activities in which [Best]] engages in the Territory from time to time during the term hereof.*

*See* Reilly Agreement, ¶6(a).

20.    Schedule A of the Reilly Agreement defines the restricted Territory as *Sioux*

*Falls, Yankton, Watertown, Aberdeen, Pierre, and Rapid City, South Dakota; and Fairmont and*

*Marshall, Minnesota.*

21.    Reilly further agreed in ¶6(b) of the Reilly Agreement that he would not solicit

Best customers:

> *[Reilly] will not, during the Restricted Period, directly or indirectly engage in any Restricted Activities as defined above (other than on behalf of [Best]) by supplying products or providing services covered by the definition of Restricted Activities to, or otherwise soliciting, attempting to solicit, or accepting such business from, any customer within the Territory with whom [Best has] done any business during the period commencing two years prior to the date hereof and ending on the termination or expiration of [Reilly's] employment with [Best], whether as an officer, director, proprietor, employee, partner, investor (other than as a holder of less than 1% of the outstanding capital stock of a publicly traded corporation), consultant, advisor, agent or otherwise, alone or jointly with others.*

22.     Lastly, Reilly agreed in ¶6(e) of the Reilly Agreement that he would not recruit

Best employees:

> [Reilly] will not, during the Restricted Period, directly or indirectly (i) induce,
> recruit or solicit employees of [Best] to engage in any activities hereby prohibited
> to [Reilly] or to terminate their employment or (ii) hire any individual who was,
> within the then previous 12 months, or who is, an employee of [Best].

**D.      Confidentiality and Non-Competition Agreements – Other Defendants.**

23.     At the inception of their employment with Best, Defendants Bergeson, Ewing,

Liebsch, Linton, Pitts, and Robson each received Best's Employee Handbook and acknowledged

that it was their responsibility to comply with the policies set forth therein.

24.     Best's Employee Handbook contained a Non-Disclosure & Confidential

Information provision which provided that:

> The protection of business information and trade secrets is vital to the interests
> and success of BBP.
>
> The nature of our business is highly competitive.  Projects which you will be
> working on and much of the information available to you as an employee of this
> company is of a valuable, confidential nature.  "Confidential information"
> includes but is not limited to: information received from clients, client billing
> levels and discounts, information relating to business operations, research data,
> specific project fees, estimates, projects, notes, memoranda and data regarding
> proposals, prospective projects and clients, salary levels, promotional efforts,
> computer software and computer files, and data accumulated by programming
> and analysis, which you prepare, compile, have access to or receive at any time
> during the course of your employment.
>
> Employees shall not disclose or provide any such confidential information to
> outsiders.  Employees are also prohibited from removing confidential information
> from the company or using confidential information in an unauthorized manner.
> If you are ever in doubt as to whether information is confidential, treat it as
> confidential.  Employees should refer any requests for information from any
> outsider to one of the Supervisors. An employee's unauthorized disclosure, use or
> removal of confidential information may result in discipline, up to and including
> termination, and appropriate legal action.  Your obligation to maintain the
> confidentiality of such information and not to disclose, remove it or use it in an
> unauthorized manner, continues both during and after your employment with BBP
> and without time limitation.

25.     At the inception of their employment with Best, on information and belief,

Defendants Bergeson, Ewing, Liebsch, Linton, Pitts, and Robson executed Employee

Confidentiality Agreements with Best, wherein they agreed that:

> For, and during, the entire term of my employment with Best Business Products,
> Inc. ("BBP"), any information, data, sales figures, sales projections, estimates,
> promotions, pricing of equipment, products or services, customer files, lists or
> requirements, tax records, personnel history, accounting records and procedures,
> methods of operation, financial data and information, business plans and
> projections, and all other information relating to Best Business Products, Inc. and
> relating to customers of Best Business Products, Inc., shall be considered and
> kept as the private, privileged and confidential records of BBP and will not be
> divulged, disclosed, or communicated to any firm, individual or institution except
> on the direct authorization of the president of BBP.

> Upon the termination of my employment at any time, for any reason, I agree that I
> will return all such information and any copies or reproductions thereof to BBP,
> and that I will continue to treat as private, privileged and confidential all
> information referred to in this agreement, whether it relates to Best Business
> Products, Inc. or any customer of Best Business Products, Inc., and I will not
> divulge, disclose or communicate any such information to any person, firm or
> institution, either by statement, copy, description, deposition or as a witness,
> except upon direct written authority of the president of BBP. BBP shall be entitled
> to an injunction restraining you from disclosing, in any manner, the information
> protected by this agreement, and to recover damages and costs, including
> attorney's fees, in any competent court with regard to any unauthorized disclosure
> of such information.

26.     Also at the inception of their employment, on the information and belief,

Defendants Bergeson, Ewing, Liebsch, Linton, Pitts, and Robson executed Non-Competition

Agreements with Best, wherein they agreed that:

> For a period of two years after termination of his/her employment with Best
> Business Products, Inc. in any manner, whether with or without cause, employee
> will not within the state of South Dakota, or within 50 miles of any city in which
> Best Business Products, Inc. maintains a branch office, engage directly or
> indirectly in the same business as that conducted by Best Business Products, Inc.

> The undersigned employee further agrees that he/she shall not during the said
> two-year period and within the said area, solicit existing customers of Best

*Business Products, Inc., so long as Best Business Products, Inc. continues to carry on its business therein.*

27.     The Employee Confidentiality and Non-Compete Agreements signed, on information and belief, by Defendants Bergeson, Ewing, Liebsch, Linton, Pitts and Robson, were attached as forms 401 and 402 of the Employee Handbook.   These Defendants signed Acknowledgments verifying that that they received a copy of the full Handbook and intended to comply with the policies contained in it.   Attached as Exhibit B-1 thru B-6 are true and correct copies of Defendants' signed Acknowledgments.

28.     In April 2011, a few weeks before the closing of Marco's acquisition of Best, Defendant Reilly instructed Best's then Human Resources assistant, Janet Lemme, to remove all of the Employee Confidentiality and Non-Compete Agreements from the personnel files of all of the employees of Best and instructed her to give such documents to him.   Ms. Lemme complied and provided Reilly with all of the Employee Confidentiality and Non-Compete Agreements. *See* Ms. Lemme's email, attached as Exhibit C.   Reilly did not provide these Employee Confidentiality and Non-Compete Agreements to Marco, and these documents have now conveniently disappeared.

**E.     Marco and Advanced Systems Compete to Acquire Best Business Products.**

29.     In September 2010, the Trustee put Best on the market for sale and did so through an auction/bidding process.   Defendants Reilly and Ewing, as members of the executive team, were extremely involved in the bidding process and sale.   Defendants Reilly and Ewing were privy to information relating to the sale, including the identity of the bidders and gathered "due diligence" information for the potential buyers.

30.     In total, there were three entities that emerged as the final bidders for the purchase of Best, including Marco and Advanced Systems.

31.     During the due diligence process, Best provided the three bidding entities confidential and proprietary information regarding its business and operations and required the bidding entities to sign a Confidential Disclosure Agreement.  A true and correct copy of the Confidential Disclosure Agreement between Best and Advanced Systems is attached as Exhibit D.

32.     Advanced Systems executed the Confidential Disclosure Agreement on or about September 17, 2010, in which it acknowledged that "in the course of exploring the potential sale of [Best], [Best] would provide Advanced Systems certain confidential information." The term "Confidential Information" is defined in the Confidential Disclosure Agreement as:

> *all information or property at any time and from time to time disclosed or transferred or made available by or on behalf of [Best] to [Advanced Systems], including specifically, without limitation, all technical, financial and business information, all data, compilations, product samples, plans, information on electronic media, software, printouts and other printed, typewritten or handwritten documents, systems, strategies, business and marketing development plans, customer lists, names of suppliers, research projections, processes, techniques, designs, programs, technology, ideas, improvements, inventions (whether or not patentable or copyrightable), and information about operations and maintenance, trade secrets, models prototypes and the like.*

33.     Pursuant to the Confidential Disclosure Agreement, Advanced Systems acknowledged that:

> *[Best] is the owner or licensee of the Confidential Information.  [Advanced Systems] shall not use any of the Confidential Information at any time except for purposes approved by [Best].*

34.     In the Confidential Disclosure Agreement, Advanced Systems also agreed that:

> *[Advanced Systems'] employees who have direct knowledge of the [sale of Best] shall not  induce or attempt to induce any employee of [Best] to leave [Best's] employ, nor will  [Advanced Systems'] employees who have direct knowledge of the [sale of Best] contact any customer or supplier of [Best] to induce or attempt to induce such customers or suppliers to reduce or cease doing business with [Best].*

35.     The obligations set forth in the Confidential Disclosure Agreement entered into between Best and Advanced Systems began on September 17, 2010, and continue for a period of two years thereafter, until September 17, 2012.

36.     During the due diligence process, Advanced Systems obtained a CD copy of Best's entire customer and billing database, E-Automate, which database included 8,128 customer records. The information was provided to Advanced Systems in an un-redacted form. E-Automate contains not only the identity of each customer of Best and sales person, but also information on each piece of equipment under contract, when the contract term began and when it ends, and profitability/margins information. Advanced Systems was the sole bidding entity to receive a copy of the database.

37.     On December 15, 2010, the President of Advanced Systems, James L. Newcomb sent an e-mail to the Trustee wherein he reiterated and promised that Advanced Systems would not disclose to any outside sources information obtained from Best during the due diligence process.

38.     After the bidding entities performed their due-diligence, each bidding entity submitted a bid to purchase Best. Marco was notified by Best on or about January 27, 2011, that it was selected as the winning bidder. Upon information and belief, Advanced Systems was notified of its loss of the bid around this same time. Although it lost the bid, Advanced Systems informed the Trustee that it wished to be reconsidered if Marco's purchase of Best somehow "fell through."

**F.     Marco Purchases Assets of Best For A Significant Purchase Price.**

39.     On April 11, 2011, Marco entered into an Asset Purchase Agreement with Best wherein Marco agreed to purchase all of Best's assets, including, among other items, Best's

inventory, accounts receivable, rental equipment, contract rights, vehicles, furniture, fixtures, technology, equipment, software, intellectual property, website content, licenses and permits, telephone and facsimile numbers, current and prospective account lists, checking account, goodwill and all other tangible or intangible, personal or mixed property, of every kind and description, wherever located, of Best relating to the business, including "claims, causes of action, rights of recovery, refunds, rebates deposits and rights of set off of any kind."

40.     Marco's asset purchase also included the purchase of the name "Best Business Products."

41.     Through its purchase of Best, Marco became the exclusive distributor of Canon products in Best's eight service areas, six in South Dakota (Sioux Falls, Rapid City, Aberdeen, Pierre, Watertown and Yankton) and two in Minnesota (Marshall and Fairmont).

42.     As of the day of Closing, Marco succeeded to all of Best's contractual rights, including the Employee Confidentiality and Non-Competition Agreements, the Reilly Agreement, and the Confidential Disclosure Agreement entered into between Best and Defendant Advanced Systems. Marco also succeeded to all of Best's contractual rights with Best's customers.

## G.     Advanced System's Aggressive Campaign to Solicit Best Employees in Violation of the Non-solicitation Covenant in the Confidential Disclosure Agreement.

43.     Advanced Systems began soliciting Best employees prior to the Closing. Upon information and belief, Advanced Systems contacted employees through the assistance of Ewing and Reilly, both of whom were executive/management level employees with Best. Even though Reilly and Ewing were executive level employees who reported to the Trustee, and were intimately involved with the bidding process and sale of Best to Marco, they began to assist Advanced Systems by bad-mouthing Marco to employees and telling employees that they would

lose their jobs once Marco came on board.

44.     Advanced Systems directly solicited a number of Best employees in violation of the non-solicitation covenant contained in the Confidential Disclosure Agreement. Among other employees, Dave Quint, Advanced Systems' VP of Sales, contacted employee Doug Patrick, who is a sales manager, and told him that he was interested in Mr. Patrick "joining their team if things didn't work out."

45.     Advanced Systems also solicited a number of employees in Best's Sioux Falls and Yankton and Pierre offices.

46.     On April 28, 2011, Defendants Bergeson, Ewing, Liebsch and Pitts, all simultaneously resigned from their employment with Best.

47.     Although Robson signed a Non-Compete Agreement with Marco on April 25, 2011, he notified Marco on May 2, 2011 that he was "rescinding" the newly signed agreement and was revoking acceptance of a job offer with Marco.

48.     On Sunday May 8, 2011, Defendant Reilly informed Marco that he would not accept Marco's offer of employment indicating in an e-mail that, "After having a couple of weeks to reflect I need to inform all of you that I will not be accepting your job offer. I have encountered numerous personal health issues in the past 6 months and I will be taking some time off from to work on these issues." Upon information and belief, Reilly received a severance payment from Best of approximately $90,000.

**H.     Defendant Ewing Accepts Position with Advanced Systems and Steals Best Confidential Information Prior to His Departure.**

49.     Best's phone records show that on March 30, 2011, while Ewing was still an employee with Best, he had a 49.1 minute conversation with a representative of Advanced Systems located in Waterloo, Iowa.

50.     Approximately two weeks later, on or about April 18, 2011, Ewing copied a large volume of data from his work computer onto four portable flash-drives. This was eleven days prior to his resignation of employment. In addition to copying a number of ostensibly personal files and pictures, Ewing also copied a number of Best documents containing highly confidential and proprietary information.

51.     Among others, Ewing copied two .pdf files titled "Equipment List" and "Contract Profitability."

52.     The Equipment List document lists every single piece of equipment that is under contract with Best for all Best customers as of April 18, 2011. The information contained in this document is extremely confidential and proprietary because it lists each and every piece of equipment that is under contract with Best for all Best customers, which contracts Marco purchased in April. Ewing generated and printed this document (which is 2,198 pages) on April 18, 2011 at 8:50 a.m.

53.     Another document that Ewing copied onto the portable flash-drive is a .pdf file that was also created and printed on April 18, 2011, eleven days before Ewing resigned from his employment. This second document (which is 1,931 pages) lists profitability margins on all of Best's customer contracts from 1/1/2010 to 12/31/2010, the same customer contracts which Marco purchased in April.

54.     Neither of the foregoing documents was a document that would have been generated in the normal course of business to distribute to employees. To generate these two documents, Ewing accessed the Best E-Automate Database and generated "reports" listing this information.

I.    **Defendant Advanced Systems Uses of Best Confidential Information, to Unfairly**
      **Compete Against Marco.**

55.    Upon information and belief, Advanced Systems has used the Confidential
Information it obtained during the due diligence process from Best and from the individual
Defendants, including the information that Ewing stole prior to his departure from Best, to solicit
Best's employees and Best's customer accounts.  Advanced Systems had the names of all of
Best's salespersons and service technicians and what account each individual serviced on the E-
Automate Database CD that it obtained from Best.  It is now employing a former executive of
Best who not only had access to Best proprietary information during his employment, but took
copies of such information for the benefit of his new employer.

56.    Upon information and belief, Advanced Systems was not doing business outside
of Iowa until after it obtained Best's Confidential Information.  Aside from opening a new
branch office in Sioux Falls just a few weeks ago, and staffing it with Best employees, Advanced
Systems has also been targeting Best-specific service areas.

57.    On May 17, 2011, a Marco employee saw an Advanced Systems vehicle driving
around Marshall, Minnesota—a location that is hundreds of miles away from any of Advanced
Systems' offices.  Marshall, Minnesota is one of Best's service areas that Marco acquired.

58.    Advanced Systems recently sent out an announcement detailing the opening of
"new branch office" in Sioux Falls.  This announcement, attached as Exhibit E, was sent to
Best's customers.  The announcement identified Linton, Ewing, Pitts and Bergeson as employees
of Defendant Advanced Systems and lists as the contact information for Advanced Systems in
Sioux Falls as 605-929-9178, the same cell phone number that Linton used as an employee of
Best.

59.    Lastly, the announcement, states in big bold letters, "Canon Authorized Dealer,"

18

which is intentionally misleading because Advanced Systems is not an authorized Canon dealer in South Dakota. Sioux Falls was one of Best's service areas, and Marco acquired such service area as part of its acquisition of Best. Marco is the exclusive Canon authorized dealer in Sioux Falls.

60.     In addition to the announcement which was sent to Best's customers, Advanced Systems also ran an advertisement in the Argus Leader newspaper. Like the announcement, the advertisement is intentionally misleading as it states that Advanced Systems is "an authorized Canon dealer." Advanced Systems omits that it is not authorized out of Sioux Falls. A copy of the advertisement is attached as Exhibit F. If a consumer in South Dakota were to call Canon to inquire about obtaining a Canon product, Canon would refer such customer to Marco, not Advanced Systems.

**J.     Advanced Systems Conducts Business Out of Ewing's Home And Targets Best Customers.**

61.     Advanced Systems has a business address of 930 West Cherokee Street, Sioux Falls, South Dakota. However, as of last week, this space was not occupied by any Advance Systems personnel. Instead, Defendants Bergeson, Ewing, Liebsch, Linton, and Pitts, along with several other Advanced Systems employees, have been conducting business out of Ewing's home.

62.     On or about May 18, 2011, several Advanced Systems vehicles were seen parked outside of Ewing's home. In addition, Bergeson, Ewing, Liebsch, Linton and Pitts were seen entering and leaving Ewing's home dressed in business suits.

63.     Defendants Bergeson, Ewing, Liebsch, Linton and Pitts began immediately soliciting Best's customers upon leaving their employment with Best.

64.     Linton was seen on-site at Best's largest customer, a regional medical clinic.  The identity of this customer will be provided to the Court once a protective order is in place.  In addition, on May 10, 2011, Defendant Pitts along with another Advanced Systems employee, whose name is "Mike" and who identified himself as sales manager for Advanced Systems, paid a personal visit to one of Best's customer accounts in Brookings.  Pitts and his sales manager made a pitch for the customer's service business and indicated that Pitts had been servicing the machines that Best placed on the customer's site and that Pitts wished to continue to service those machines on behalf of Advanced Systems.

65.     In addition to the service work, Advanced Systems also made a pitch to bid for new copier equipment for this customer location in Brookings.  The Best customer is currently soliciting bids for copier products for its site, which process has been in the works for close to a year.  The customer utilizes three brands of copiers: Xerox, Canon and Konica.  Marco is an authorized dealer of Canon and Konica equipment.  Advanced Systems told the customer that it should be allowed to submit a bid for Canon products instead of Marco and told the customer that Advanced Systems is an authorized dealer of Canon products in the area, which is an untrue statement.  Marco is the only dealer authorized by Canon to sell, distribute and service Canon products out of Sioux Falls and Brookings.  This bidding process for the new copier equipment for this particular customer started about a year ago, and Advanced Systems did not come into the picture until after it hired Pitts.  The identity of this customer will be provided to the Court once a protective order is in place.

66.     Another Best customer recently informed Marco that he intended to move his company's business to Advanced Systems because he had been approached by Defendant

Bergeson recently and that he liked Bergeson. The identity of this customer will be provided to the Court once a protective order is in place.

67.    On May 24, 2011, Marco received a notification from one of its Best customers, a law firm in Brookings that it wished to terminate its contract with Best. Upon information and belief, this customer was solicited by Advanced Systems and is moving its business over to Advanced Systems. The identity of this customer will be provided to the Court once a protective order is in place.

## K.    Defendant Reilly's Related Misconduct and Breaches of Fiduciary Duties and Violation of His Non-Compete Agreement.

68.    In addition to Reilly bad-mouthing Marco to Best employees prior to the Closing, Reilly has also been violating the terms of his Employment Agreement with Best, which Employment Agreement was assigned to Marco as part of the asset sale.

69.    On Friday, May 13, 2011, Marco employees saw Reilly at Mama's Ladas restaurant at approximately 11:30 a.m. sitting with Bill Schoemer, a former employee of Best/Marco. The Marco employees sat at the table right next to Reilly and Mr. Schoemer. The tables at Mama's Ladas restaurant are extremely close so the Marco employees were able to overhear Reilly and Mr. Schoemer's conversation clearly. Reilly was initially speaking on his cell phone. He was talking to an individual who he kept referring to as "big guy." During this conversation, Marco employees overheard Reilly tell "big guy" that he was starting a new dealership in Sioux Falls, and that there was "a guy throwing money at it." During this call, he indicated that they "did not have any hardware," but they were already "selling and hitting the streets."

70.     Reilly and Mr. Schoemer were then joined by Vince Smith, the former accountant for Best.  Marco employees overheard Reilly and Mr. Schoemer discuss the Canon product line, and overheard Reilly say that they still needed to put "comp plans" in place for everyone.

71.     Marco employees also overhead Reilly and Mr. Smith express concern about e-mail communications sent to one another, stating that they did not know if they sent each other anything "incriminating."  They discussed sending each other e-mails from their Best e-mail accounts to their personal e-mail accounts, and Mr. Smith stated that he no longer had access to his Best e-mail account so he could not confirm whether or not there was anything worth worrying about in their e-mail exchanges.

72.     Marco employees overheard Reilly, Mr. Schoemer and Mr. Smith discuss the fact that Marco was looking for the non-compete agreements.  Reilly admitted that he took the Best non-compete agreements and told Mr. Smith that he had put them under the accountant's chair.

73.     Marco employees overheard Mr. Smith ask Reilly if he had been served with any papers.  Mr. Reilly responded that he was not worried about a lawsuit claiming that "Marco is a big corporation trying to push people around and a judge will throw it out of court."

74.     In addition to this conversation wherein Reilly declared that he was in fact involved in a competing venture, upon information and belief, Reilly also entered Marco's premises without permission, after hours, and removed items from his former office.

## COUNT ONE
## BREACH OF CONTRACT: EMPLOYEE NON-COMPETE AGREEMENT
### (Defendants Ewing, Bergeson, Linton, Liebsch, Pitts and Robson)

75.     Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

76.     Upon information and belief, Defendants Ewing, Bergeson, Linton, Liebsch, Pitts and Robson each signed Employee Non-Competition Agreements with Best acknowledging and agreeing that they would not engage directly or indirectly in the same business as that conducted by Best within the state of South Dakota or within 50 miles of any city in which Best maintains a branch office, for two years following the termination of their employment with Best.

77.     Best's rights under the Employee Non-Competition Agreements were transferred and assigned to Marco under the Asset Purchase Agreement between Marco and Best, dated April 11, 2011.

78.     Copies of Defendants Ewing, Bergeson, Linton, Liebsch, Pitts and Robson's signed Employee Non-Competition Agreements were removed from their respective personnel files by Best's former Human Resources assistant at the instruction of Defendant Reilly, were never provided to Marco, and have now "disappeared."

79.     Defendants are nonetheless bound by the terms contained in the Employee Non-Competition Agreements that they signed while employed with Best.

80.     Defendants Ewing, Bergeson, Linton, Liebsch, Pitts and Robson breached their Employee Non-Competition Agreements with Best by directly competing in Sioux Falls, Rapid City, Aberdeen, Pierre, Watertown, Yankton and an area within 50-miles of such cities.

81.     Marco, as the successor in interest to Best under the Employee Non-Competition Agreements, has been damaged as a result of Defendants' breaches and further seeks damages against the Defendants in excess of $75,000, exclusive of interests and costs, in an amount to be determined at trial.

82.     Marco also seeks recovery of its attorneys' fees and costs as provided for in the Employee Non-Competition Agreements.

**COUNT TWO**
**BREACH OF CONTRACT: REILLY AGREEMENT**
**(Defendant Reilly)**

83.     Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

84.     The Reilly Agreement is a valid and binding contract between Best and Reilly.

85.     When Marco acquired Best, Marco succeeded to all of Best's contractual and statutory rights and became the successor in interest to Best under the Reilly Agreement. Moreover, the Reilly Agreement specifically provides that ". . . upon the sale of all or substantially all of the assets, business and good will of the Company to another person . . . This Agreement shall inure to the benefit of, and be binding upon, both the Employee and the purchaser of such assets, business and goodwill, or the survivor of such merger or consolidation, as the case may be, in the same manner and to the same extent as though such purchaser or survivor were the Company. *It is understood and agreed that any such purchaser or survivor may enforce this Agreement.*" [emphasis added].

86.     The Reilly Agreement specifically precludes Reilly from disclosing Proprietary Information, as defined in the Reilly Agreement, both during the period of his employment with Best and after termination.

87.     The Reilly Agreement specifically precludes Reilly from engaging directly or indirectly in the Restricted Activities, as defined in the Reilly Agreement, for two years following the termination of his employment, within a 150 mile radius of Sioux Falls, Yankton,

Watertown, Aberdeen, Pierre, and Rapid City, South Dakota; and Fairmont and Marshall, Minnesota.

88.     The Reilly Agreement also specifically precludes Reilly from soliciting existing customers within the Territory, as defined in the Agreement, that have done business with Best between 2007 and Reilly's termination.

89.     The Reilly Agreement specifically precludes Reilly from recruiting Best's employees or hiring any individual who was an employee of Best within the previous twelve months.

90.     Upon information and belief, Reilly has breached, and will continue to breach, the Reilly Agreement through his current and anticipated work with a competing new business venture.

91.     Marco lacks an adequate remedy at law for Reilly's breach of the Reilly Agreement, as such breach threatens Marco with irreparable harm, including the use or disclosure of its Proprietary Information and the destruction of its valuable business, customer relationships, and goodwill.  As a result of Reilly's breach, Marco seeks injunctive relief restraining Reilly from disclosing Marco's Proprietary Information, from recruiting former Marco employees, and from soliciting Marco's customers.

92.     Marco further seeks damages against Reilly that exceed $75,000, exclusive of interests and costs, in an amount to be determined at trial.  Marco also seeks the recovery of its attorneys' fees and all costs and expenses of litigation as provided for under ¶16 of the Reilly Agreement.

## COUNT THREE
## BREACH OF CONTRACT:  CONFIDENTIAL DISCLOSURE AGREEMENT
### (Defendant Advanced Systems)

93.     Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

94.     Advanced Systems was provided with Best's confidential and proprietary information regarding Best's employees, customers, and operations (collectively "Confidential Information") for purposes of evaluating its potential purchase of Best.  Best and Advanced Systems signed a Confidential Disclosure Agreement, whereby Advanced Systems agreed that it would it would not use any of the Confidential Information that it obtained from Best, "*at any time* except for purposes approved by Seller" (emphasis added).

95.     Under the terms of the Confidential Disclosure Agreement, Advanced Systems employees who have direct knowledge of a potential transaction with Best are also precluded from inducing or attempting to induce any employee of Best to leave Best's employ.

96.     The Confidential Disclosure Agreement also precludes any Advanced System employee who had direct knowledge of the potential transaction with Best, from contacting any customer or supplier of Best to induce or attempt to induce such customers or suppliers to reduce or cease doing business with Best.

97.     Best's Confidential Information was sold to Marco as part of the asset sale.  In addition, Best's rights and claims under the Confidential Disclosure Agreement were assigned and transferred to Marco as part of the sale.  Accordingly, Marco is the successor in interest to all rights of Best under the Confidential Disclosure Agreement.

98.     Advanced Systems has breached the employee non-solicitation clause of the Confidential Disclosure Agreement by directly soliciting a number of Best employees, including

the individual Defendants as well as Doug Patrick and other Best employees who are currently employed with Marco.

99.     Advanced Systems also breached the customer non-solicitation clause of the Confidential Disclosure Agreement by having employees who had knowledge of the potential transaction with Best, including Defendant Ewing, contact customers of Best to induce or attempt to induce such customers or suppliers to reduce or cease doing business with Best.

100.     Upon information and belief, Advanced Systems is using Best Confidential Information to target Best customers at the eight Best service areas in South Dakota and Minnesota, which service areas Marco acquired as part of its acquisition of Best.

101.     Marco lacks an adequate remedy at law for Advanced Systems' breaches of the Confidential Disclosure Agreement, as such breaches threaten Marco with irreparable harm, including the use or disclosure of its confidential information and the destruction of its valuable business, customer relationships and goodwill.

102.     As a result of Advanced Systems' breaches, Marco seeks injunctive relief restraining Advanced Systems from using any of Best's Confidential Information that Marco acquired, from inducing or attempting to induce any employee of Marco to leave Marco's employ, or from contacting any customer or supplier of Best/Marco to induce or attempt to induce such customers or suppliers to reduce or cease doing business with Best/Marco.

103.     Marco further seeks damages against Advanced Systems in excess of $75,000, exclusive or interests and costs, in an amount to be determined at trial.

## COUNT FOUR
## BREACH OF DUTY OF LOYALTY AND
## VIOLATION OF S.D. CODIFIED LAWS §§ 60-2-10, 60-2-13
### (All Individual Defendants)

104.    Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

105.    As employees of Best, the individual Defendants owed undivided and unqualified duties of loyalty to Best to act solely for Best's benefit in all matters connected to their employment.

106.    When Marco acquired Best, Marco succeeded to all of Best's contractual and statutory rights.

107.    The individual Defendants have breached the duty of loyalty they owed to Best by, among other actions:

(a)    misappropriating Best's confidential and proprietary information and, on information and belief, using such information to Marco's detriment and for their own pecuniary gain;

(b)    facilitating the misappropriation of confidential information related to Best's customers which Marco acquired, so that they could use said information to compete against and undercut Marco in the marketplace; and

(c)    conspiring to benefit Advanced Systems, a direct competitor of Marco.

108.    As a direct and proximate result of the individual Defendants' breaches of their duties of loyalty, Marco is suffering immediate and irreparable injury, harm and damage, and will continue to suffer injury, harm and damage unless and until the individual Defendants are enjoined from engaging in further misconduct or profiting from their past misconduct. Marco

also seeks damages against the individual Defendant in an amount in excess of $75,000 to be determined at trial.

**COUNT FIVE**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**AND BUSINESS RELATIONSHIPS**
**(All Defendants)**

109.   Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

110.   Marco has valid business relationships and expectancies with the Best customers and contracts that it acquired.

111.   Defendants had knowledge of and were aware of Best/Marco's business relationships and expectancies with customers.

112.   By misappropriating Best's Confidential Information and using it to induce or attempt to induce customers or suppliers to reduce or cease doing business with Best/Marco, Defendants intentionally and unjustifiably interfered with Marco's valid business relationships and expectancies with customers.

113.   Marco has been irreparably injured by Defendants' interference, and is without a complete and adequate remedy at law.

114.   Defendants' interference have caused Marco harm in the form of damage to customer good will and monetary damages from disrupted business relationships and expectancies. To remedy this tortious interference, Defendants must be enjoined from using Best's Confidential Information. Furthermore, Marco is entitled to damages in an amount in excess of $75,000 to be determined at trial.

## COUNT SIX
## UNFAIR COMPETITION
### (All Defendants)

115.    Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

116.    Defendants' conduct and actions, misappropriation and disclosure of confidential and proprietary information, as described above, constitute unfair competition in violation of the common law.

117.    Defendants' unfair competition has damaged or will cause damage to Marco, which has suffered, and will continue to suffer, irreparable harm that justifies enjoining Defendants' from their illegal and improper actions, along with all other remedies available to Marco. Marco has also suffered or will suffer monetary damages in excess of $75,000, exclusive of interest and costs, in an amount to be determined at trial.

## COUNT SEVEN
## UNJUST ENRICHMENT
### (All Defendants)

118.    By virtue of the benefits that Defendants have received because of the disclosure and use of Best's Confidential Information, Defendants have been unjustly enriched.

119.    The Defendants' unjust enrichment has caused Marco to suffer, and will continue to suffer, irreparable harm that justifies enjoining Defendants' from their illegal and improper actions, along with all other remedies available to Marco. Marco has also suffered or will suffer monetary damages in excess of $75,000, exclusive of interest and costs, in an amount to be determined at trial.

## COUNT EIGHT
## VIOLATION OF THE UNIFORM TRADE SECRET ACT,
## S.D. CODIFIED LAWS § 37-29-1, et seq.
## (All Defendants)

120.   Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

121.   The Defendants have a duty under the Uniform Trade Secrets Act, S.D. Codified Laws, § 37-29-1, et seq., to protect Best's trade secret information.

122.   Much of the data, information, and documents Defendants obtained from Best consisted of lists, data, compilations, programs, methods, techniques, or processes that derive independent value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of such data, information, and documents, and constitute trade secrets under the Act.

123.   Best expended reasonable efforts to protect the secrecy of its proprietary, confidential and trade secret information, under the circumstances alleged above.   Best's confidential and trade secret information is a valuable asset that Marco purchased in April of 2011.

124.   The Defendants have misappropriated, or threatened to misappropriate, Best's trade secrets and confidential information.  In particular, Defendants have acquired by improper means data, information, and documents known to Defendants to contain Best's trade secrets. Further, Defendants have disclosed or used Best's trade secrets without express or implied consent from Marco while knowing and having reason to know that those trade secrets were derived from or through a person or persons who had utilized improper means to acquire them, or had acquired them under circumstances giving rise to a duty to maintain their secrecy or limit

31

their use, or were derived from or through a person or persons who owed a duty to Best to maintain their secrecy or limit their use. Marco is a successor in interest to all rights of Best relating to Best's confidential information and trade secrets.

125.    The Defendants have or will inevitably use and/or disclose Best's trade secrets. Marco did not consent to Defendants' misappropriation, disclosure, and use of Best's trade secrets.

126.    As a direct and proximate result of Defendants' wrongful misappropriation of trade secrets, and subsequent communication of such highly confidential information to others, Marco is suffering immediate and irreparable injury, harm and damage, and will continue to suffer injury, harm and damage, unless and until the Defendants are restrained.

127.    As a further direct and proximate cause of Defendants' wrongful misappropriation of trade secrets, Marco has suffered or will suffer damages in excess of $75,000 to be determined at the time of trial.

**COUNT NINE**
**CONVERSION**
**(All Defendants)**

128.    Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

129.    Defendants have jointly, collectively, and independently converted Marco's confidential and proprietary (non-trade secret) information, documents, and other property.

130.    At all times material hereto, all right, title, and interests in Marco's confidential and proprietary (non-trade secret) information, documents, and other property resided with Marco.

32

131.    Notwithstanding Marco's ownership of Marco's confidential and proprietary (non-trade secret) information, documents, and other property, Defendants intentionally and willfully interfered with Marco's confidential and proprietary (non-trade secret) information, documents, and other property.

132.    Marco was deprived of the use and possession of its proprietary (non-trade secret) information, documents, and other property as a result of the intentional and willful acts of interference by Defendants.

133.    Defendants lacked lawful justification to deprive Marco of its interests in its proprietary (non-trade secret) information, documents, and other property.

134.    Marco has been, and will continue to be, irreparably harmed by Defendants' intentional and willful conversion of Marco's confidential and proprietary (non-trade secret) information, documents, and other property.

135.    Marco will be or has been irreparably injured by Defendants' intentional and willful conversion of Marco's confidential and proprietary (non-trade secret) information, documents, and other property and is without a complete and adequate remedy at law.

**COUNT TEN**
**CONSPIRACY**
**(All Defendants)**

136.    Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

137.    As set forth above, the Defendants owed contractual and statutory duties to Best, including the duty of loyalty.  Marco is a successor of interest to Best's statutory and contract rights by virtue of the acquisition of Best.

138.    As set forth above, the individual Defendants and Advanced Systems agreed and conspired to, among other things, divert Best/Marco's customers to Advanced Systems, misappropriate Best's trade secrets, confidential, and proprietary information, convert Best's confidential and proprietary information and other property, interfere with Best's contractual rights and obligations, and use Best's confidential, proprietary, and other property to unfairly compete against Best/Marco and otherwise interfere with Best/Marco's business.

139.    In furtherance of the conspiracy set forth above, Defendants committed numerous overt wrongful acts, as alleged above.

140.    Defendants had knowledge of Best/Marco's interests and acted with the intent to unlawfully deprive Marco of those interests.

141.    As a result of the acts undertaken by Defendants as part of the conspiracy set forth above, Marco has suffered, and will suffer, irreparable harm.

142.    As a direct and proximate result of Defendants' conspiracy, Marco is suffering immediate and irreparable injury, harm and damage, and will continue to suffer injury, harm and damage unless and until Defendants are enjoined from engaging in further misconduct or profiting from their past misconduct. Defendants must also pay, jointly and severally, damages in an amount to be determined at trial.

## COUNT ELEVEN
## AIDING AND ABETTING
### (All Defendants)

143.    Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

144.   As set forth above, the Defendants owed contractual and statutory duties to Best/Marco, including the duties of loyalty.  Marco is a successor of interest to Best's statutory and contract rights by virtue of its acquisition of Best in April of 2011.

145.   As set forth above, Defendants caused numerous tortious injuries to Marco, including misappropriating trade secret, confidential, and proprietary information, converting confidential and proprietary information and other property, breaching contracts with Best, interfering with contractual rights and obligations, and using Best's confidential and proprietary information and other property to unfairly compete against Marco and otherwise interfere with Marco's business.

146.   Defendants knew that each of these acts constituted a breach of duty to Best/Marco.

147.   Defendant Advanced Systems substantially assisted and encouraged the individual Defendants (and the individual Defendants substantially assisted and encouraged each other) to breach their duties to Best/Marco.

148.   As a result of the substantial assistance and encouragement by Defendants to aid and abet the tortious injuries set forth above, Marco has suffered, and will suffer, irreparable harm.

149.   As a direct and proximate result of Defendants' acts, Marco is suffering immediate and irreparable injury, harm and damage, and will continue to suffer injury, harm and damage unless and until Defendants are enjoined from engaging in further misconduct or profiting from their past misconduct.  Defendants must also pay, jointly and severally, damages in an amount in excess of $75,000 to be determined at trial.

**COUNT TWELVE**
**TORTIOUS INTERFERENCE WITH**
**CONTRACT - NON-COMPETE AGREEMENTS**
**(Defendant Advanced Systems)**

150.	Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

151.	Defendants Ewing, Bergeson, Pitts, Linton, Liebsch and Robson all signed non-compete agreements with Best indicating that they would not for a two year period, within 50 miles of any city that Best maintains a branch office, engage directly or indirectly the same business as conducted by Best or solicit any existing customer of Best.

152.	Defendant Reilly signed a non-compete agreement which prohibits him for a two year period to compete in the restricted "Territory" defined as anywhere within a 150 mile radius of Sioux Falls, Yankton, Watertown, Aberdeen, Pierre, Rapid City and Fairmont, Minnesota and Marshall, Minnesota.

153.	Defendants' respective agreements also prohibit Defendants from soliciting Best's employees or customers.

154.	Advanced Systems was aware of Defendants' non-compete and non-solicitation obligations.  Best's rights and claims under Defendants' non-compete agreements were assigned and transferred to Marco as part of Bests' asset sale to Marco.

155.	Advanced Systems interfered with the non-compete agreements by soliciting and hiring Defendants to start Advanced System's Sioux Falls branch office.

**COUNT THIRTEEN**
**BREACH OF CONTRACT: EMPLOYEE CONFIDENTIALITY AGREEMENT**
**(Defendants Ewing, Bergeson, Linton, Liebsch, Pitts and Robson)**

156.	Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

36

157.    Defendants Ewing, Bergeson, Linton, Liebsch, Pitts and Robson each signed an Employee Confidentiality Agreements with Best acknowledging and agreeing that, "during the entire term of [their] employment with Best Business Products, Inc. any information, data, sales figures, sales projections, estimates, promotions, pricing of equipment, products, or services, customer files, lists or requirements, tax records, personnel history, accounting records, methods of operation, financial data and information, business plans and projections, and all other information relating to Best Business Products, Inc. and relating to Best Business Products, Inc. shall be considered and kept as the private, privileged and confidential records of [Best Business Products] and will not be divulged, disclosed or communicated to any firm."

158.    The Employee Confidentiality Agreements specifically preclude the Individual Defendants from disclosing Best's private, privileged and confidential information, as identified in the Agreements, both during the period of their employment with Best and after its termination.

159.    The individual Defendants have breached and, upon information and belief, will continue to breach the Employee Confidentiality Agreements through their current or anticipated work for Advanced Systems.

160.    Marco lacks an adequate remedy at law for the individual Defendants' breach of the Employee Confidentiality Agreements, as such breach threatens Marco with irreparable harm, including the use or disclosure of its confidential information and the destruction of its valuable business, customer relationships and goodwill.

161.    As a result of the individual Defendants' breach, Marco seeks injunctive relief restraining the individual Defendants from disclosing Best's privileged and confidential

information, from engaging directly or indirectly in business activities with Defendant Advanced

Systems and from soliciting Best/Marco's existing customers.

162.    Marco further seeks damages against the individual Defendants in excess of

$75,000, exclusive of interests and costs, in an amount to be determined at trial.

**COUNT FOURTEEN**
**TORTIOUS INTERFERENCE WITH EMPLOYEE CONFIDENTIALITY**
**AGREEMENT**
**(Defendant Advanced Systems)**

163.    Marco repeats and realleges the allegations contained in the foregoing paragraphs

of this Complaint.

164.    Marco has valid confidentiality contracts with the individual Defendant.

Defendants signed confidentiality agreements while employed with Best. Marco succeeded to

Best's rights under such contracts by virtue of its acquisition of Best in April 2011.

165.    Advanced Systems had knowledge of and were aware of the individual

Defendants' confidentiality agreements.

166.    Advanced Systems intentionally and unjustifiably interfered with the individual

Defendants' confidentiality agreements.

167.    Marco has been irreparably injured by Advanced Systems' interference, and is

without a complete and adequate remedy at law.

168.    Advanced Systems' interference has caused Marco harm in the form of damage to

customer good will and monetary damages. To remedy this tortious interference, Advanced

Systems must be enjoined from using Best's Confidential Information.  Furthermore, Marco is

entitled to damages in an amount that is not presently ascertainable, but which shall be proved at

the time of trial.

## COUNT FIFTEEN
## VIOLATION OF THE DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT,
## S.D. CODIFIED LAWS § 37-24-6, et seq.
## (Defendant Advanced Systems)

169.     Marco repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint.

170.     It is a deceptive trade act or practice under the Deceptive Trade Practices and Consumer Protection Act, § 37-24-6 ("Deceptive Trade Practices Act") for any person to, "knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived or damaged thereby."

171.     As used in the Chapter, the term "person" includes "a corporation (domestic or foreign)."

172.     The Deceptive Trade Practices Act also provides that "Any person who claims to have been adversely affected by any act or practice to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice."

173.     Defendant Advanced Systems' announcements, which were distributed to individuals and companies in South Dakota, and its advertisement in the Argus Leader were intentionally misleading and deceptive as they stated in prominent fashion that Advanced Systems is an "Authorized Canon Dealer." The phrase was added to lead consumers to believe that Advanced Systems is an authorized Canon dealer out of South Dakota, when it is not. Indeed, Marco is the only authorized Canon dealer out of the State of South Dakota.

174.    Marco has been damaged by Advanced Systems deceptive acts and/or omissions and has suffered, and will continue to suffer, damages in excess of $75,000 to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Marco prays for a judgment and decree in its favor against Defendants as follows:

1.    Temporarily and permanently enjoining and restraining Defendant Advanced Systems (and any entity or individual acting as an agent of Advanced Systems or for Advanced Systems' benefit) from contacting, soliciting, selling, servicing, contracting or otherwise diverting business from:

    (a)    all customers of Best listed on Best's E-Automate Database CD that was provided to Advanced Systems during the due-diligence process;

    (b)    all customers of Best that the individual Defendants improperly solicited, sold to, contacted or diverted on behalf of Advanced Systems or any third party using Best's Confidential Information, including but not limited to the Confidential Information that Defendant Ewing misappropriated from Best on or about April 18, 2011; and

    (c)    all customers that the individual Defendants improperly solicited, sold to, contacted or diverted on behalf of Advanced Systems during their employment with Best and in contravention of their contractual or common law duties to Best, which rights and claims were transferred and assigned to Plaintiff Marco as part of Best's asset sale to Marco effective April 11, 2011.

2.    Temporarily and permanently enjoining and restraining Defendant Advanced Systems from committing further violations of its Confidential Disclosure Agreement and common law and statutory duties toward Best, which rights and claims were transferred and assigned to Plaintiff Marco as part of Best's asset sale to Marco effective April 11, 2011, including but not limited to, an order enjoining and restraining Defendant Advanced Systems from inducing or attempting to induce any employee of Marco to leave Marco's employ or

contacting any customer or supplier of Marco to induce or attempt to induce such customers or suppliers to reduce or cease doing business with Marco.

3.   Temporarily and permanently enjoining and restraining Defendant Advanced Systems (and any entity or individual acting as an agent of Advanced Systems or for Advanced Systems' benefit) from displaying on any communications to consumers in South Dakota, whether in any advertisements or announcements, that Advanced Systems in an "Authorized Canon Dealer."

4.   Temporarily and permanently enjoining and restraining Defendant Reilly from committing further violations of the Reilly Agreement and common law and statutory duties toward Best, which rights and claims were transferred and assigned to Plaintiff Marco as part of Best's asset sale to Marco effective April 11, 2011, including, but not limited to, an order enjoining and restraining Reilly from engaging directly or indirectly in the same business as that conducted by Best/Marco or from soliciting the existing customers of Best/Marco.

5.   Temporarily and permanently enjoining and restraining the remaining individual Defendants from committing further violations of their Employee Confidentiality Agreements and their Employee Non-Competition Agreements and common law and statutory duties toward Best, which rights and claims were transferred and assigned to Plaintiff Marco as part of Best's asset sale to Marco effective April 11, 2011, including, but not limited to, an order enjoining and restraining Reilly from engaging directly or indirectly in the same business as that conducted by Best/Marco or from soliciting the existing customers of Best/Marco.

6.   Temporarily and permanently enjoining and restraining all of the Defendants from using, possessing or disclosing, and ordering Defendants to return to Marco any of Best's Confidential Information, including proprietary or trade secret information and property, in their

41

possession, custody or control.

7.      Ordering Defendants to disgorge all revenues that they (or any entity for which they act or have acted as an agent) have received or been promised as a result of actions taken in violation of the Reilly Agreement, the Employee Confidentiality and Non-Competition Agreements, the Confidential Disclosure Agreement and common law and statutory duties.

8.      Ordering Defendants (in their individual capacities and in their capacities as agents of any third party) to preserve and not destroy any personal or business computer or computer files pending this litigation.

9.      Awarding Marco damages for the violation of the Deceptive Trade Practices Act, breach of the Confidential Disclosure Agreement, the Reilly Agreement, the Employee Confidentiality Agreements, the Employee Non-Competition Agreements and the violations of common law and statutory duties in an amount greater than $75,000 as determined at trial.

10.     Awarding Marco its attorneys' and expert fees, costs and disbursements.

11.     Awarding Marco such other, further or different relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

### PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Dated: **May 27**, 2011

_Mel Cyt_

Melanie L. Carpenter
Woods Fuller Shultz & Smith P.C.
300 S. Phillips Avenue, Suite 300
Sioux Falls, SD 57104-6322
Telephone:  (605) 336-3890
Melanie.Carpenter@woodsfuller.com

and

Daniel Scott (MN#240837 - Motion for *Pro Hac* Admission Pending)
Joel Abrahamson (MN#236895 - Motion for *Pro Hac* Admission Pending)
Anh Le Kremer (MN#311923 – Motion for *Pro Hac* Admission Pending)

LEONARD, STREET AND DEINARD
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
daniel.scott@leonard.com
joel.abrahamson@leonard.com
anh.kremer@leonard.com

**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION

STATE OF MINNESOTA    )
                                : ss

COUNTY OF STEARNS    )

Jennifer Mrozek, being duly sworn, deposes and states as follows:

1.      I am the Chief Financial Officer of Marco, Inc. and an agent of Plaintiff for purposes of executing this document.

2.      I have read the foregoing Complaint and subscribe to same on behalf of Plaintiff, noting that this Complaint has been prepared with the assistance of employees and counsel and on the advice of counsel, and are based upon information, obtained from records still in existence, presently recollected, or thus far discovered in the course of preparation of said Complaint. Subject to inadvertent or undiscovered errors or omissions and to the limitations set forth therein, said Complaint is true and correct to the best of my present knowledge, information and belief.

_____
Jennifer Mrozek

Subscribed and sworn to before me
this 26 day of May , 2011.

_____
Notary Public

LENORE BRIDGET LOMMEL
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2015