UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARCO, INC., a Minnesota Corporation, | ) ) ) | CR. 11-4072-KES |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT |
| ADVANCED SYSTEMS, INC., an Iowa Corporation; CHRISTINE M. BERGESON; WAYNE C. EWING; JIM E. LIEBSCH; MICHAEL R. LINTON; LORIN PITTS; PAUL W. ROBSON, JR.; and KENT REILLY, | ) ) ) ) ) ) ) ) ) ) | ADVANCED SYSTEMS, INC.'S MOTION TO CLARIFY |
| Defendants. | ) | |

Plaintiff, Marco, Inc., brought suit against defendants, including Advanced Systems, Inc. (ASI), asserting various causes of action related to alleged breaches of non-disclosure and employment agreements. On July 13, 2011, the court granted Marco's amended motion for a preliminary injunction. Docket 68. ASI moves to clarify the preliminary injunction. Docket 71. Marco resists. ASI's motion is granted in part and denied in part.

**BACKGROUND**

The pertinent facts to this order are as follows:

In 2010, Marco and ASI entered a bidding competition to purchase Best Business Products, a South Dakota company that sold and serviced office equipment. On September 17, 2010, ASI and Best entered into a "Confidential Disclosure Agreement" (September NDA). On December 7, 2010, ASI and Best entered into another "Non-Disclosure and Confidentiality Agreement," which ASI drafted (December NDA). After entering into the December NDA, ASI received additional confidential and proprietary information about Best, which was contained in Best's "E-Automate" program, a software program used by companies to manage their inventory, finances, service histories, and customer service records. ASI received a CD containing a complete, unredacted copy of Best's entire customer database and other confidential and proprietary information. Marco later won the bidding competition and succeeded to all of Best's contractual rights.

After ASI lost the bidding competition, it decided to independently enter the South Dakota market. ASI hired a number of former Best employees and began cold-calling businesses, including Best customers, in South Dakota. Marco then filed suit against ASI. The court entered a preliminary injunction which prohibits ASI and any of its employees from using, possessing, or disclosing any of Marco/Best's confidential information and from contacting, soliciting, inducing, or attempting to induce, any Best customer to do business with ASI. Docket 71 at 27.

**DISCUSSION**

I.  **Definition of Customers**

ASI requests the court to clarify "who is considered a customer of Best Business Products (BBP)?" Docket 71 at 2. Marco argues that ASI's motion violates local civil rule 7.1(B), which requires that the movant set forth "the specific points of law with the authorities in support thereof on which the movant relies, including the Federal Rule of Civil Procedure on the basis of which the motion is made," because ASI fails to specify any law, authority, or rule in support of its motion. Marco asserts that ASI moves under Federal Rule of Civil Procedure 65, which allows a party to move for reconsideration of a court order, and that the Rule 65 motion is improper because the preliminary injunction is clear.

The court will not construe ASI's motion as a Rule 65 motion. The parties legitimately dispute the preliminary injunction's terms and attempted to resolve the issues before seeking the court's clarification. *See e.g.*, Docket 79-2. A motion to clarify an order when a legitimate dispute arises is a proper motion. *See, e.g., Glen v. Fairway Indep. Mortg. Corp.*, No. 4:08-CV-730-RWS, 2010 WL 891621, at *1 (E.D. Mo. Mar. 8, 2010) (granting a motion to clarify the court's order when the parties disputed what the court ordered); *Henry v. Premcor*

*Refining Group*, No. 3:07-CV-00518-WRW, 2010 WL 129669, at *1 (E.D. Ark. Jan. 11, 2010) (same).

ASI asserts that a customer "is a person or business who had a product under contract with BBP or an ongoing contract service agreement as of December 7, 2010." Docket 71 at 2. Marco contends that a customer is any one of the 8,128 businesses, which were included on the e-automate database disc. Docket 78 at 1. The preliminary injunction states that

> Advanced Systems and any of its employees and/or agents are prohibited from contacting, soliciting, inducing, or attempting to induce any customer of Best Business Products (to the extent that such customer was a customer of Best Business Products as of December 7, 2010) to do business with Advanced Systems, Inc. or cease doing business with Marco/Best until a final decision has been issued in this case or until December 7, 2012, *see* Docket 56-4 at ¶ 9 (stating that the December 7, 2010, NDA is effective for two years), whichever occurs first. For purposes of clarification, ASI may continue its cold-call operation, but known Best customers should not be contacted and when a potential customer discloses that it has either a product under contract with Best or a service contract with Best, all contact by ASI with that customer should immediately cease.

Docket 68 at 27.

The preliminary injunction enforced sections 2(e) and 2(f) of the December NDA:

> 2. Neither party will, directly or indirectly, in any many [sic] whatsoever
>
> . . .

>(e) Induce or attempt to induce any vendor, customer, employee, sub-representative, or independent contractor or other party to terminate such relationship; or
>
>(f) Use any Proprietary or Confidential Information to solicit any customer of the other party for the purpose of selling or offering to sell such customers products or goods the same as or similar to the goods or products sold or offered for sale by the other party.
>
>. . .
>
>The foregoing restrictions (a) through (f) shall not apply with respect to any portion of the Proprietary Information which, as of this date, is in the public domain or which is disclosed to the public by a third party, which or who is not under a legal or contractual restriction with respect to such disclosure.
>
>. . .
>
>9. The restrictions contained in the Agreement shall survive for a period of two (2) years from the date hereof.

Docket 56-4 at 5-7. The December NDA does not define customer.

Iowa law applies to the interpretation of the December NDA. Under Iowa law, the cardinal rule of contract interpretation is to determine what the parties intended at the time they entered into the contract. *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). This is a two-step process. *Id.* First, the court determines whether the term to be interpreted is ambiguous, which occurs when a genuine uncertainty exists about a term's meaning. *Id.* (citation omitted). Here, the term "customer" is ambiguous because the December NDA does not define customer, customer has varying meanings in different industries, and the parties dispute the term's meaning.

Second, if there is an ambiguity, then the court must choose among possible meanings. *Id.* (citing Restatement (Second) of Contracts § 202 cmt. a). The parties' manifestations of their intentions should be interpreted consistently with "any relevant course of performance, course of dealing, or usage of trade." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 439 (Iowa 2008) (citing Restatement (Second) of Contracts § 202(5)). "The important time frame for determining [the parties'] intent is the time the contract was executed." *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999) (citation omitted). The court gives "effect to the language of the entire contract according to its commonly accepted and ordinary meaning." *Id.* (citing *Magina v. Bartlett*, 582 N.W.2d 159, 163 (Iowa 1998)). Words are not interpreted in isolation but rather in the context in which the parties used them. *Id.* (citations omitted). The interpretation must be reasonable. *Walsh*, 622 N.W.2d at 503.

The parties intended the December NDA to apply to proprietary information as of the agreement's effective date, December 7, 2010. *See* Docket 56-4 at 6 ("The foregoing restrictions (a) through (f) shall not apply with respect to any portion of the Proprietary Information which, as of this date . . . ."). ASI requested that Best and ASI enter into the December NDA to protect each party's privileged and confidential information and so that the parties would not use each other's privileged information in the future. By giving effect to the entire contract, the purposes of the December NDA, and relying on the time

6

frame established by the parties, a reasonable definition of customer is any person or business that entered into a service contract with Best before December 7, 2010, which was still effective as of December 7, 2010, or any person or business that had a product under contract with Best which was effective on or after December 7, 2010.

Marco asserts that any business that ever purchased a product from Best should be considered a Best customer for purposes of the preliminary injunction. But Marco's proposed definition is too broad and could prove unworkable, as evidenced by Marco's suggestion to entrust ASI's counsel, Jon Sogn, or a third party with the list of Best "customers" contained on the e-automate disc and require ASI to consult with either Mr. Sogn or the third party before contacting a business. Marco's suggestions and other arguments are unpersuasive.

## II.   Businesses Outside South Dakota

ASI requests clarification on whether "[i]f prior to December 7, 2010, as part of ASI's business operations out of one of its Iowa branches, ASI was having ongoing discussions with a non-South Dakota business about doing business with ASI, is ASI prohibited from soliciting business from that company?" Docket 71 at 3. Marco does not specifically address this point.

Neither the December NDA nor the preliminary injunction contain geographic limitations concerning Best's customers. Thus, ASI is prohibited

from soliciting any of Best's customers as ordered in the preliminary injunction and defined in this order, regardless of where that customer is located.

### III.  Inter-Territorial Agreements

ASI further asks whether the preliminary injunction applies to subcontract agreements (also known as inter-territorial arrangements) to perform work for another dealer. An inter-territorial agreement occurs when "a third-party dealer who may have sold a machine in the Sioux Falls area contacts Marco or Advanced to provide service on that machine. The customer is billed by the third-party dealer, and the third-party dealer in turn pays an amount to Marco or Advanced for their services." Docket 71 at 3. Marco does not specifically address this point.

Marco has no legitimate expectation in business generated when a third-party dealer contacts a local company to service a machine it sold to a customer. Furthermore, the December NDA does not address this scenario and the court will not add in new terms to the parties' contract. *See, e.g.*, *Pillsbury*, 752 N.W.2d at 439 (reasoning that "courts should not rewrite, modify, or limit" contractual provisions). Thus, the preliminary injunction does not prohibit ASI from entering into inter-territorial agreements when a third party contacts ASI to service a machine that a dealer sold. Accordingly, it is

ORDERED that defendant Advanced Systems, Inc.'s motion to clarify (Docket 71) is granted in part and denied in part. Customer, as used in the

preliminary injunction, is defined as any person or business that entered into a contract with Best on or before December 7, 2010, that was still effective as of December 7, 2010, or any person or business that had a product under contract with Best that was effective on or after December 7, 2010. The preliminary injunction applies to all Best customers, regardless of the state where that customer is located. The preliminary injunction does not apply to inter-territorial agreements where a third-party dealer contacts ASI to service a product that dealer sold.

      Dated November 22, 2011.

                        BY THE COURT:

                        /s/ *Karen E. Schreier*
                        KAREN E. SCHREIER
                        CHIEF JUDGE